IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| FEDERICO VERDUZCO-VEGA, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| v. | § | Civil Case 2:24-CV-84-Z-BR |
| | § | (Criminal Case 2:22-CR-106-Z-BR-2) |
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Respondent. | § | |

**FINDINGS, CONCLUSIONS AND RECOMMENDATIONS**
**TO DENY MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE**

Petitioner Federico Verduzco-Vega filed a motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255 by a person in federal custody. (ECF 2). The motion was referred to the undersigned for findings, conclusions and recommendations. Having considered the motion, the response, the record and applicable authorities, the Court concludes that Verduzco-Vega's motion should be DENIED for the reasons set forth below.

**I. FACTUAL BACKGROUND**

The record in Verduzco-Vega's underlying criminal case, No. 2:22-CR-106-Z-BR (the "CR"), shows the following:

On December 7, 2022, Verduzco-Vega pleaded guilty to one count of Possession with Intent to Distribute Methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C). (CR ECF 29, 45). The plea agreement, signed by Verduzco-Vega, acknowledged that the sentence would be solely in the discretion of the Court. (CR ECF 45). The agreement further acknowledged that no guarantees or promises had been made to him as to what the sentence ultimately would be. *Id*. Verduzco-Vega and his counsel also signed a factual resume setting forth the elements of the indictment and the stipulated facts establishing that Verduzco-Vega had committed the offense.

(CR ECF 44).

Verduzco-Vega testified under oath, through an interpreter, at his rearraignment hearing that: he had read, understood and discussed the indictment with his attorney; he had read, understood, discussed with his attorney, and signed the plea agreement and factual resume; there were no other promises or agreements that had not been included in the plea agreement; he understood that the district judge would decide his sentence; he understood that his attorney could give an opinion but could not promise what his sentence would be; he understood that he was waiving his right to appeal except in limited circumstances; he was guilty of the offense charged, and everything in the factual resume was true and correct. (CR ECF 103). He further testified that he was fully satisfied with his attorney and the representation and advice that had been given to him in the case. (*Id.* at 12).

The probation officer then prepared a presentence report ("PSR"), which reflected that Verduzco-Vega's base offense level was 38. (CR ECF 60-1 ¶ 33). After reductions for special offense characteristics and for acceptance of responsibility, his total offense level was determined to be 33. (*Id.* ¶¶ 34-42). The guideline range based upon his plea was 135-168 months. (*Id.* ¶ 75).

On April 25, 2023, the District Court sentenced Verduzco-Vega to a term of imprisonment of 135 months, followed by one year of supervised release. (CR ECF 74). At sentencing, the Court noted the considerable impact of the plea agreement, in that Verduzco-Vega could have faced a maximum sentence of life imprisonment and up to $10 million in fines had he not entered into the agreement. (CR ECF 100 at 9). The Court further noted that, even if the guideline range had not been calculated correctly, the same sentence would have been imposed. (*Id*. at 20). Verduzco-Vega did not file a direct appeal. On April 24, 2024, Verduzco-Vega timely filed this Motion to Vacate. (CR ECF 63).

On May 28, 2024, Verduzco-Vega filed a Motion to Reduce Sentence pursuant to

Amendment 821, which the District Court granted on June 24, 2024. (CR ECF 101, 105). Consequently, his sentence was reduced from 135 months to 108 months. (CR ECF 105).

## II. GROUNDS FOR RELIEF

Verduzco-Vega asserts the following grounds for his motion to vacate:

(1) ineffective assistance of counsel for failing to file a direct appeal;

(2) ineffective assistance of counsel for failing to explain the consequences of his guilty plea; and

(3) his guilty plea was not knowing and voluntary.

(ECF 2).

## III. LEGAL ANALYSIS

**A.    Section 2255.**

After conviction and exhaustion or waiver of a defendant's right to appeal, courts are entitled to presume that the defendant stands fairly and finally convicted. *United States v. Frady*, 456 U.S. 152, 164-165 (1982); *United States v. Shaid*, 937 F.2d 228, 231-32 (5th Cir. 1991) (same). A defendant can challenge his conviction or sentence after it is presumed final only on issues of constitutional or jurisdictional magnitude, and may not raise an issue for the first time on collateral review without showing both cause for his procedural default and actual prejudice resulting from the errors. *Id.* at 232.

Section 2255 does not offer recourse to all who suffer trial errors. "[A]n error that may justify reversal on direct appeal will not necessarily support a collateral attack on a final judgment." *United States v. Addonizio*, 442 U.S. 178, 184 (1979). Section 2255 is reserved for transgressions of constitutional rights and other narrow injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice. *United States v. Capua*, 656 F.2d 1033, 1037 (5th Cir. Unit A Sept. 1981). In other words, a writ of habeas corpus will not be

allowed to do service for an appeal. *Davis v. United States*, 417 U.S. 333, 345 (1974); *United States v. Placente*, 81 F.3d 555, 558 (5th Cir. 1996). Further, if issues are raised and considered on direct appeal, a defendant is thereafter precluded from urging the same issues in a later collateral attack. *Moore v. United States*, 598 F.2d 439, 441 (5th Cir. 1979) (citing *Buckelew v. United States*, 575 F.2d 515, 517-18 (5th Cir. 1978)).

**B.     Ineffective Assistance of Counsel.**

To prevail on an ineffective assistance of counsel claim, the movant must show that (1) counsel's performance fell below an objective standard of reasonableness and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." *Id.*; *see also United States v. Stewart*, 207 F.3d 750, 751 (5th Cir. 2000) ("Failure to meet either the deficient performance prong or the prejudice prong will defeat a claim for ineffective assistance of counsel.").

Simply making conclusory allegations of deficient performance and prejudice is not sufficient to meet the *Strickland* test. *Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000). "Surmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010). The likelihood of a different result "must be substantial, not just conceivable," *Harrington v. Richter*, 562 U.S. 86, 112 (2011), and a movant must prove that counsel's errors "so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Cullen v. Pinholster*, 563 U.S. 170, 189 (2011) (quoting *Strickland*, 466 U.S. at 686). Judicial scrutiny of this type of claim must be highly deferential and the petitioner must overcome a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Strickland*, 466 U.S. at 689.

### C. Evidentiary Hearing.

On September 15, 2025, the Court held an evidentiary hearing on two issues raised in Verduzco-Vega's motion: whether Verduzco-Vega's counsel, Ryan Turman ("Turman"): (1) failed to file a notice of appeal as instructed; and (2) failed to consult with Verduzco-Vega regarding an appeal. The remainder of the issues alleged by Verduzco-Vega in his motion did not warrant an evidentiary hearing. Section 2255 motions do not automatically require a hearing. *United States v. Hughes*, 635 F.2d 449, 451 (5th Cir. Unit B Jan. 1981); *see also* Rule 8 of the Rules Governing Section 2255 Proceedings. A prisoner is not entitled to an evidentiary hearing unless he or she "presents 'independent indicia of the likely merit of [her] allegations.'" *United States v. Reed*, 719 F.3d 369, 373 (5th Cir. 2013).

#### 1. Verduzco-Vega's Testimony.

During the evidentiary hearing, Verduzco-Vega testified through an interpreter that he signed the plea agreement in his underlying criminal case, and it was translated from English to Spanish for him before he signed it. (ECF 23 at 8). However, Verduzco-Vega testified that he did not understand it and only signed where Turman indicated on the document. Verduzco-Vega testified that "didn't understand any of this" and "didn't know what I was signing." (*Id*. at 10, 18). He testified that Turman would not explain anything to him, and just told him where to sign various documents. He testified that he did not understand the significance of the documents he was signing. (*Id*. at 10-11). However, Verduzco-Vega acknowledged telling the Court in his underlying criminal case that he understood the paperwork. (*Id*. at 17-18). Verduzco-Vega further testified that Turman told him he could expect a sentence of eight to eleven years, and he was, in fact, sentenced to eleven years. (*Id*. at 12). He claims, however, that he was promised an eight-year sentence because he cooperated with the government. (*Id*.).

Verduzco-Vega further testified that he did not want to appeal his sentence, nor did he ask Turman about appealing his sentence. (*Id*. at 13-14, 18). He testified that he did not see Turman after sentencing, nor have they spoken since that time. After sentencing, they never discussed whether Verduzco-Vega should appeal the sentence. (*Id*. at 16-17). Verduzco-Vega never called or wrote to Turman after sentencing to tell Turman that he wanted to appeal. (*Id*. at 18-19). Verduzco-Vega first decided that he wanted to appeal when he was incarcerated in California, where a friend and the friend's attorney told him that he could appeal. (*Id*. at 14). The friend and the friend's attorney helped Verduzco-Vega by filing his successful Motion to Reduce Sentence and this motion. (*Id*.).

   **2. Ryan Turman's Testimony.**

Turman testified that he has been an attorney for 20 years and is fluent in Spanish, having lived in Chile for a time. He has worked as a translator in the past. (*Id*. at 20-22). He testified that he reviewed Verduzco-Vega's plea agreement and factual resume with him in Spanish and believed at the time that Verduzco-Vega understood the documents before he signed them. (*Id*. at 24-25). If he had believed that Verduzco-Vega did not understand the proceedings, he would not have continued with the guilty plea. (*Id*. at 25). Turman testified that he reviewed the Notice of Right to Appeal with Verduzco-Vega, and would not have had him sign it if he believed Verduzco-Vega did not understand it. (*Id*. at 26). After sentencing, Verduzco-Vega did not immediately ask him to appeal, nor did Verduzco-Vega later call or write to ask him to file a notice of appeal. (*Id*. at 25-26). They never spoke again after sentencing. (*Id*. at 26-27). Turman testified that Verduzco-Vega never instructed Turman to file a notice of appeal, but Turman did not memorialize in his file a waiver of appeal by Verduzco-Vega. (*Id*. at 27, 29).

**D. Ground One: Failure to File Direct Appeal.**

   Verduzco-Vega alleges in his motion that Turman was ineffective for failing to file a direct

appeal. (ECF 2 at 4). He claims that, "had Counsel apprised, properly informed, not [misled] or deceived Petitioner, a Notice of Appeal would have been filed and Petitioner would have had an opportunity to file a direct appeal." (*Id.*). Verduzco-Vega's motion does not specify how Turman allegedly misled or deceived him.

### 1. Failure to File Notice of Appeal.

The *Strickland* test applies to claims that counsel was constitutionally ineffective for failing to file a notice of appeal. *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000); *see also United States v. Bejarano*, 751 F.3d 280, 285 (5th Cir. 2014) (per curiam) (quoting *Flores-Ortega*, 528 U.S. at 477). Indeed, under Supreme Court precedent, "a lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a professionally unreasonable manner." *Flores-Ortega*, 528 U.S. at 477 (citing *Rodriquez v. United States*, 395 U.S. 327 (1969); *see also Garza v. Idaho*, 586 U.S. 232, 242 (2019) ("Where . . . a defendant has expressly requested an appeal, counsel performs deficiently by disregarding the defendant's instructions."). In such case, "prejudice will be presumed." *United States v. Tapp*, 491 F.3d 263, 266 (5th Cir. 2007). "[W]hen counsel's constitutionally deficient performance deprives a defendant of an appeal that he otherwise would have taken, the defendant has made out a successful ineffective assistance of counsel claim entitling him to an appeal." *Flores-Ortega*, 528 U.S. at 484. This "presumption applies even when the defendant has signed an appeal waiver." *Garza*, 586 U.S. at 237; *see also Tapp*, 491 F.3d at 266.

Therefore, the issue here is whether Verduzco-Vega specifically directed Turman to file an appeal, and whether Turman disregarded the instruction. Verduzco-Vega's motion provided the following sworn statements in support of his claim:

> 1. "[B]efore and after sentencing, [Verduzco-Vega] had discussed about an appeal with Counsel. Counsel failed to guide, explain and inform [Verduzco-Vega] of a direct appeal."

    2.     After sentencing, Verduzco-Vega "was left incommunicado from his attorney" and his "attempts to contact his attorney were almost unsuccessful."

    3.     Verduzco-Vega "anticipated on a direct appeal but later learned that Counsel had not filed a direct appeal."

    4.     "Counsel failed to file an appeal despite Verduzco-Vega's wish to appeal. Counsel simply ignored [Verduzco-Vega's] questions."

(ECF 4 at 1-2.)[1] At the evidentiary hearing, Verduzco-Vega testified that, in fact, he initially did not want to appeal his sentence, and he did not ask Turman to appeal his sentence. (ECF 23 at 13, 18). Verduzco-Vega testified that he first decided that he wanted to appeal his conviction after he reached his U.S. Bureau Of Prisons facility in California, where a friend told him that the friend's attorney could file an appeal for him. (*Id*. at 14). Turman also testified that Verduzco-Vega never asked him to file a notice of appeal. (*Id*. at 27).

Based on the totality of the evidence presented, the Court finds that Verduzco-Vega did not notify Turman that he wanted to appeal, either before or after sentencing.[2] As a result, because Turman did not disregard an explicit instruction from Verduzco-Vega to file a notice of appeal, he was not constitutionally ineffective. *Cf. Flores-Ortega*, 528 U.S. at 477 (restating that "a lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable" (cited cases omitted)). Verduzco-Vega is not entitled to relief

---

[1]The Court notes that the signature on Verduzco-Vega's Declaration is markedly different than the signature on his Plea Agreement, which causes the Court to question its veracity; nevertheless, for the purposes of this motion, the Court assumes that the Declaration is a sworn statement from Verduzco-Vega. (*See, e.g.*, ECF 4 at 2; CR ECF 45 at 8).

[2]To the extent Verduzco-Vega alleges that counsel never informed him of his right to appeal, the Court finds that he was adequately informed during his rearraignment hearing that he was giving up his right to appeal by pleading guilty. (*See* CR ECF 103 at 23). Even when an attorney fails to properly explain an issue prior to rearraignment, no valid ineffective assistance claim exists if the Court corrected such failure. *See Lott v. Hargett*, 80 F.3d 161, 167-68 (5th Cir. 1996) (a defendant suffers no prejudice due to receiving misinformation from his attorney where the plea colloquy reflects that the court corrected any such misinformation).

on his claim that Turman failed to file a requested notice of appeal.

### 2. Failure to Consult About an Appeal.

Verduzco-Vega's motion alleges that Turman failed to consult with him about whether he wanted to appeal. In cases "where the defendant neither instructs counsel to file an appeal nor asks that an appeal not be taken," the Supreme Court has held that "the question whether counsel has performed deficiently by not filing a notice of appeal is best answered by first asking a separate, but antecedent, question: whether counsel in fact consulted with the defendant about an appeal." *Flores-Ortega*, 528 U.S. at 478. The Supreme Court has explained that it employs "the term 'consult' to convey a specific meaning[:] advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes." *Id*.

When counsel has not consulted with the defendant, the Court must consider "whether counsel's failure to consult with the defendant itself constitutes deficient performance." *Id*. In this context, the Supreme Court has stated that:

> counsel has a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing. In making this determination, courts must take into account all the information counsel knew or should have known.

*Id.* at 480. In order to establish prejudice under *Strickland*, "a defendant must demonstrate that there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed." *Id*. at 484. Verduzco-Vega states in his motion that, after sentencing, he was "left incommunicado from his attorney" and that his attempts to contact his attorney "were almost unsuccessful" and he was "subjected to transfer." (ECF 4 at 1). Testimony at the evidentiary hearing shows that Turman did not consult with Verduzco-Vega

about an appeal after sentencing. (ECF 23 at 16-19, 26-27). Therefore, the salient question becomes whether this failure to consult itself constitutes deficient performance.

In considering the information that counsel knew or should have known after Verduzco-Vega was sentenced, the Court finds there is no basis to believe that a rational defendant would want to appeal. A "highly relevant factor in this inquiry" is "whether the conviction follow[ed] a trial or a guilty plea, both because a guilty plea reduces the scope of potentially appealable issues, and because a plea may indicate that the defendant wished his legal proceedings to end. *Flores-Ortega*, 528 U.S. at 480. When a defendant pleads guilty, the Court also should consider whether he received the sentence he bargained for and whether the plea waived—or expressly reserved—specific appellate rights. *Id.*

The evidence shows that Verduzco-Vega waived his right to appeal in connection with his guilty plea, except for his right to appeal (1) a sentence exceeding the statutory maximum punishment or an arithmetic error at sentencing; (2) to challenge the voluntariness of his guilty plea or of his plea waiver; and (3) the effectiveness of his counsel. (CR ECF 45 at 6). He also received the sentence he bargained for; the plea agreement stated that Verduzco-Vega would be imprisoned for not more than 20 years, and he received 135 months, which was the lowest possible sentence in his guideline range of 135-168 months. (CR ECF 45, 74). Verduzco-Vega's testimony at the evidentiary hearing that he was promised an eight-year sentence is belied by both the plea agreement and his representations in his criminal case and thus is not credible. (CR ECF 103 at 14-15).

In addition, Verduzco-Vega provided no evidence that he reasonably demonstrated to Turman that he was interested in appealing. *See United States v. Calderon*, 665 F. App'x 356, 366 (5th Cir. 2016) (per curiam) (finding no prejudice because movant presented no evidence that he would have actually appealed, apart from his counsel's alleged failure to consult about an appeal).

Verduzco-Vega admitted that he did not inquire about the status of an appeal or convey his disappointment with counsel's failure to appeal. (ECF 23 at 16-19). Significantly, Verduzco-Vega did not file his Section 2255 motion until nearly a year after sentencing. *See Flores-Ortega*, 528 U.S. at 485 (concluding that "promptly express[ing] a desire to appeal will often be highly relevant" in determining prejudice); *Bejarano*, 751 F.3d at 287 (noting that post-sentencing actions, such as waiting almost a full year after sentencing to file a Section 2255 motion, "indicate [the defendant] was unlikely to have" timely appealed). (*See* CR ECF 77; ECF 2 at 12).

Although Verduzco-Vega is not required to demonstrate that an appeal would have been successful, he also has not suggested any non-frivolous ground for appeal that he would have pursued. *See Bejarano*, 751 F.3d at 285 (concluding that non-frivolous grounds for appeal may be relevant in assessing prejudice). As noted in *Bejarano*, "while 'a defendant can rely on evidence that he sufficiently demonstrated to counsel his interest in an appeal,' this 'evidence alone is insufficient to establish that, had the defendant received reasonable advice from counsel about the appeal, he would have instructed his counsel to file an appeal.'" *Id.* at 286 (quoting *Flores-Ortega*, 528 U.S. at 486). A defendant "must present more to succeed." *Id*.

Because Verduzco-Vega has not demonstrated prejudice resulting from Turman's alleged failure to adequately consult regarding his right to appeal, his claim should be denied as to this ground.

**B.      Ground Two: Failing to Explain the Consequences of His Guilty Plea.**

Verduzco-Vega next alleges in his motion that Turman failed to "adequately counsel him regarding [his] situation and the difference between the plea offer[] and trial." (ECF 2 at 5). He alleges that, had counsel properly informed him about the effect of his guilty plea, he "would not have entered a plea of guilty and in its stead proceeded to trial or sought the most favorable plea offer." (ECF 3 at 6).

A guilty plea must be knowingly, voluntarily, and intelligently made to be constitutionally valid. *See United States v. Ruiz*, 536 U.S. 622, 629 (2002); *United States v. Hernandez*, 234 F.3d 252, 254-55 (5th Cir. 2000). "The voluntariness of a plea is determined by 'considering all of the relevant circumstances surrounding it.'" *Fisher v. Wainwright*, 584 F.2d 691, 693 (5th Cir. 1978) (quoting *Brady v. United States*, 397 U.S. 742, 749 (1970)); *United States v. Washington*, 480 F.3d 309, 315 (5th Cir. 2007). Courts considering challenges to guilty pleas "have focused on three core concerns: absence of coercion, the defendant's understanding of the charges, and a realistic understanding of the consequences of a guilty plea." *United States v. Garcia*, 983 F.2d 625, 627-28 (5th Cir. 1993). "If a defendant understands the charges against him, understands the consequences of a guilty plea, and voluntarily chooses to plead guilty, without being coerced to do so, the guilty plea ... will be upheld on federal review." *Frank v. Blackburn*, 646 F.2d 873, 882 (5th Cir. 1980) (en banc), *modified on other grounds*, 646 F.2d 902 (5th Cir. 1981).

Verduzco-Vega provided no support for his claim that his guilty plea was coerced. Verduzco-Vega's plea agreement represented that his guilty plea was "freely and voluntarily made," and he swore under oath that his plea was voluntary. (*See* CR ECF 45 at 6; CR ECF 103 at 15). Specifically, the plea agreement signed by Verduzco-Vega states:

> This plea of guilty is freely and voluntarily made and is not the result of force or threats, or of promises apart from those set forth in this plea agreement. There have been no guarantees or promises from anyone as to what sentence the Court will impose.

(CR ECF 45 at 6). In addition, Verduzco-Vega testified in open court that no one threatened him, forced him to plead guilty or promised him anything not contained in the plea agreement. (CR ECF 103 at 14-15). He further testified that the plea agreement had been translated into Spanish for him and that he fully understood it. (*Id*. at 13). The Court proceedings in which Verduzco-Vega testified were translated to and from Spanish and English. (CR ECF 103 at 2-3). The record further

shows that Verduzco-Vega never attempted to withdraw his guilty plea, which also indicates that his plea was knowing and voluntary. In short, Verduzco-Vega provides nothing more than a contradiction of his sworn testimony. "When a defendant's [Section 2255] allegations contradict his sworn testimony given at a plea hearing, we have required more than 'mere contradiction of his statements.'" *Reed*, 719 F.3d at 373 (quoting *United States v. Raetzsch*, 781 F.2d 1149, 1151 (5th Cir. 1985)); Verduzco-Vega's solemn declarations in open court establish his mindset at the time of the plea. *United States v. Valdez*, 973 F.3d 396, 405-06 (5th Cir. 2020).

The second prong, a realistic understanding of the consequences of a guilty plea, means that the defendant knows "the immediate and automatic consequences of that plea such as the maximum sentence length or fine." *Duke v. Cockrell*, 292 F.3d 414, 417 (5th Cir. 2002). Verduzco-Vega testified in open court that he understood the maximum sentence he faced by pleading guilty:

> THE COURT: Okay. At this point, sir, I need to make certain that you understand what the possible penalties and consequences are if there's a conviction on this offense in Count 2 of the indictment. These all were listed out for you in paragraph 3 of the plea agreement that you have signed. However, the government's attorney will read those out loud for us in court today. After those are read, I'll ask if you understand them.
>
> MS. PINKHAM: The minimum and maximum penalties the Court can impose include imprisonment for a period of not more than 20 years; a fine not to exceed $1 million, or twice any pecuniary gain to the defendant or loss to the victims; a term of supervised release of not less than three years or more than life, which is mandatory under the law and will follow any term of imprisonment; if the defendant violates the conditions of supervised release, the defendant could be in prison for the entire term of supervised release; a mandatory special assessment of $100; restitution to victims or to the community, which may be mandatory under the law and which the defendant agrees may include restitution arising from all relevant conduct, not limited to that arising from the offense of conviction alone; cost of incarceration and supervision; and forfeiture of property.
>
> THE COURT: Having heard all of those possible penalties and consequences being read out loud, do you understand each of those?
>
> THE DEFENDANT: Yes.

(CR ECF 103 at 17-8). The record clearly shows that the Court notified Verduzco-Vega of his

potential maximum sentence and fine, and that he represented he understood. As noted *supra*, no valid ineffective assistance claim exists if the Court corrected the failure by counsel to provide information. *See Lott*, 80 F.3d at 167-68. In this case, even if Turman had been deficient for failing to properly advise Verduzco-Vega of the possible maximum sentence and fine, the Court corrected any such error and, as a result, Verduzco-Vega cannot show that he was prejudiced by his counsel's allegedly insufficient performance.

Verduzco-Vega's solemn declarations in open court are entitled to a presumption of truth. *Blackledge v. Allison*, 431 U.S. 63, 74 (1977); *see also United States v. McKnight*, 570 F.3d 641, 649 (5th Cir. 2009) ("Solemn declarations in open court carry a strong presumption of verity.") (internal quotation omitted). Likewise, his plea agreement and factual resume are entitled to the same presumption. *Hobbs v. Blackburn*, 752 F.2d 1079, 1081 (5th Cir. 1985); *see also United States v. Lincks*, 82 F.4th 325 (5th Cir. 2023) (even if counsel gave mistaken sentencing information to movant, movant was not entitled to relief because he disclaimed reliance on counsel's statements in his plea agreement). Verduzco-Vega fails to overcome his declarations under oath that he understood the charges against him and knew that – regardless of any advisory guideline – the Court could impose any sentence up to 20 years. (CR ECF 103 at 17-18).

Lastly, Verduzco-Vega does not show a reasonable probability that he would have rejected the plea agreement and insisted on proceeding to trial had counsel thoroughly explained the effect of his guilty plea. *See Lee v. United States*, 582 U.S. 357, 364-65 (2017). Verduzco-Vega initially was indicted on one count of Conspiracy to Distribute and Possess with Intent to Distribute 500 Grams or More of Methamphetamine in violation of 21 U.S.C. § 846, and one count of Possession with Intent to Distribute Methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C). (CR ECF 29). He faced a maximum sentence of life imprisonment. The plea agreement negotiated by Turman allowed Verduzco-Vega to plead guilty to one count of Possession with Intent to

Distribute Methamphetamine with a statutory maximum punishment of 20 years of imprisonment. (CR ECF 45 at 2). As the Court noted at sentencing, this plea agreement would not have occurred but for his counsel's capable and effective negotiations. (CR ECF 100 at 9). Mere conclusory allegations in support of ineffective assistance claims are insufficient, as a matter of law, to raise a constitutional issue. *See Kinnamon v. Scott*, 40 F.3d 731, 735 (5th Cir. 1994) (holding that a petitioner's speculative complaints of ineffective assistance did not warrant federal habeas relief).

Regarding Verduzco-Vega's assertion that he would have sought a better plea bargain but for his counsel's performance, such claim is without merit. A defendant has no constitutional right to a plea bargain. *United States v. Lopez*, 979 F.2d 1024, 1036 (5th Cir. 1992). Verduzco-Vega does not show that the government was prepared to offer a more favorable agreement than the one he received. *See United States v. Riascos*, No. C-04-653, 2005 WL 1515447 at *4 (S.D. Tex. June 22, 2005) (movant did not "allege, nor [did] he offer any evidence to show that a 'better' plea agreement was ever offered or available to him"). Verduzco-Vega additionally does not specify what attempts Turman should have made, but failed to make, towards a "better" plea agreement. This allegation is entirely conclusory, contrary to the record, and without merit. Thus, Verduzco-Vega fails to show prejudice resulting from the alleged shortcomings of Turman in advising him about his guilty plea and his motion should be denied as to this ground.

**C.     Ground Three: Guilty Plea Was Not Knowing and Voluntary.**

Lastly, Verduzco-Vega alleges that his guilty plea was not knowing and voluntary, so it should be considered void. However, he waived this issue in his plea agreement. (CR ECF 45 at 6). Even if he had not, the Court "should not upset a plea solely because of *post hoc* assertions from a defendant about how he would have pleaded but for his attorney's deficiencies. Judges should instead look to contemporaneous evidence to substantiate a defendant's expressed preferences." *Lee v. United States*, 582 U.S. 357, 369 (2017).

As set forth above, the contemporaneous evidence undisputedly shows Verduzco-Vega's knowing and voluntary intent to plead guilty. The record, as set forth above, shows that Verduzco-Vega's guilty plea was knowing and voluntary, and was made with sufficient awareness of the relevant circumstances and likely consequences. *See Bradshaw v. Stumpf*, 545 U.S. 175, 183 (2005). The allegations in Verduzco-Vega's motion and his testimony during the evidentiary hearing are insufficient to overcome his sworn statements in open court in his underlying case to show that his guilty plea was not voluntary. *See Blackledge*, 431 U.S. at 74 ("The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible."). His motion should be denied on this ground.

### IV. CERTIFICATE OF APPEALABILITY

An appeal may not be taken to the Court of Appeals from a final order in a proceeding under Section 2255 "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(B). A certificate of appealability may issue only if a petitioner has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). When a district court rejects constitutional claims on the merits, the movant must demonstrate "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)*; Henry v. Cockrell*, 327 F.3d 429, 431 (5th Cir. 2003). When a district court denies a motion on procedural grounds without reaching the underlying constitutional claim, a certificate of appealability should issue when the petitioner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *Id.*

In this case, it is recommended that reasonable jurists could not debate the denial of

Verduzco-Vega's Section 2255 motion on substantive or procedural grounds, nor find that the issues presented are adequate to proceed. *See Miller-El*, 537 U.S. at 336-37 (citing *Slack*, 529 U.S. at 484). Accordingly, it is recommended that the Court find that Verduzco-Vega is not entitled to a certificate of appealability on all claims presented.

## V. RECOMMENDATION

For the reasons stated above, the United States Magistrate Judge recommends that the motion to vacate filed by Federico Verduzco-Vega be DENIED with prejudice and a Certificate of Appealability be DENIED as to all claims presented.

## VI. INSTRUCTIONS FOR SERVICE

The United States District Clerk is directed to send a copy of these Findings, Conclusions and Recommendation to each party by the most efficient means available.

IT IS SO RECOMMENDED.

ENTERED October 8, 2025.

_____
LEE ANN RENO
UNITED STATES MAGISTRATE JUDGE

## * NOTICE OF RIGHT TO OBJECT *

Any party may object to these proposed findings, conclusions and recommendation. In the event parties wish to object, they are hereby NOTIFIED that the deadline for filing objections is fourteen (14) days from the date of filing as indicated by the "entered" date directly above the signature line. Service is complete upon mailing, Fed. R. Civ. P. 5(b)(2)(C), or transmission by electronic means, Fed. R. Civ. P. 5(b)(2)(E). **Any objections must be filed on or before the fourteenth (14th) day after this recommendation is filed** as indicated by the "entered" date. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(d).

Any such objections shall be made in a written pleading entitled "Objections to the

Findings, Conclusions and Recommendation." Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties. A party's failure to timely file written objections shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge and accepted by the district court. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1), *as recognized in ACS Recovery Servs., Inc. v. Griffin*, 676 F.3d 512, 521 n.5 (5th Cir. 2012); *Rodriguez v. Bowen,* 857 F.2d 275, 276-77 (5th Cir. 1988).